# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| STRIKE 3 HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 1:20-cv-00960-CMH-IDD |
| v. | ) | |
| | ) | |
| MICHAEL NEMETH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S OPPOSITION TO
## DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

Plaintiff Strike 3 Holdings, LLC ("Strike 3") respectfully submits this Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss filed by Defendant, Michael Nemeth ("Motion").

**I.   INTRODUCTION**

Defendant's Motion eschews black letter law about the pleadings.  Strike 3's First Amended Complaint ("FAC") must simply provide Mr. Nemeth with notice of the claim against him and do so by alleging sufficient material to raise its claim above the speculative level.  Strike 3 is not required to prove its claim at this stage; that is what the liberal rules of discovery and the more exacting standard of summary judgement are for.  Nonetheless, Defendant not only misreads Strike 3's allegations, but demands Plaintiff include a gratuitous degree of evidence before formal discovery has even commenced.   There is no question whether Strike 3's FAC has made out a claim for copyright infringement.  The only question raised in Defendant's Motion is whether Strike 3 has plead sufficient allegations, taken as true, to plausibly demonstrate that Mr. Nemeth *is the infringer*.  The FAC exceeds that low bar.

Although Mr. Nemeth contends that his status as the subscriber to the infringing IP address does not implicate that he is the infringer, this argument ignores entire sections of the FAC.  It is

1

certainly plausible that a party with consistent and long-term access to the offending IP address also used that Internet connection to infringe Strike 3's works. Yet Strike 3 has gone a step further and alleged specific facts tying Mr. Nemeth to the infringements. Defendant is, of course, entitled to deny these allegations and prove their merits later in the litigation, but he may not take an *à la carte* approach to the pleadings in hopes of dismissing the action before Strike 3 can avail to discovery to prove the very allegations he disputes.

More troubling, Mr. Nemeth also demands a high evidentiary burden from the FAC. That is antithetical to the notice pleading standard. He does not contend that the FAC fails to give adequate notice of the claim, just that the allegations connecting him to the infringement require even more "factual enhancements" than those already provided by Strike 3. But, again, Defendant clearly has notice of Strike 3's claim that Mr. Nemeth, and not someone else, is the party who infringed its copyrights as well as Strike 3's basis for that allegation. While he may disagree with their merits, that issue is premature. Defendant thus tries to unduly raise the threshold that Strike 3 must pass to show it is entitled to take discovery. The Court should not accept Defendant's invitation to upend the well-established conventions of notice pleading.

## II.     FACTS

BitTorrent infringement cases chart a common path. Using its proprietary technology, VXN Scan, Strike 3 observed IP address 70.110.22.197 infringing its copyrighted works over the BitTorrent network. [CM/ECF 1]. The infringer using that IP address is, however, anonymous. To enjoin further infringements of its works, and to recover some of the damages resulting from the piracy, Strike 3 first files a Complaint against a "John Doe" party and then immediately filed a Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference. [CM/ECF 5–6]. The motion requested authorization from the Court to permit Strike 3 to issue a subpoena

on the Internet service provider ("ISP"), Verizon Fios, to uncover the true name and address and the subscriber to IP address 70.110.22.197. *See id.* Judge Davis granted that motion. [CM/ECF 8]. After Defendant's Motion to Quash was denied, [CM/ECF 25], the ISP responded to the subpoena, identifying Mr. Nemeth as the subscriber.

Nevertheless, Strike 3 realizes that the subscriber to a particular IP address is not necessarily the infringer. Multiple parties, such as roommates or family members, may have access to a single IP address. Thus, rather than reflexively proceed against Mr. Nemeth once his identity was revealed, Strike 3 conducted a secondary investigation[1] to determine whether it can link the subscriber (or anyone else with consistent access to the IP address) to the infringements.

That investigation uncovered multiple, salient connections between the BitTorrent activity and Mr. Nemeth. Thus, it just happens to be the case that the alleged infringer is also the subscriber to IP address 70.110.22.197; Strike 3 did not proceed against Mr. Nemeth solely based on his status as the registered subscriber. Strike 3 then filed its First Amended Complaint ("FAC") on February 25, 2021 and *explicitly* outlined the evidence connecting Mr. Nemeth to the infringement. [CM/ECF 30]. First, not only does the ISP's response to Strike 3's subpoena confirm that Mr. Nemeth was the subscriber–and thus had access to IP address 70.110.22.197–for at least one of the thirty-two infringements, but Mr. Nemeth has also resided at the same address throughout the entire period of infringement. *See id.* at ¶¶ 48–49.

Second, and critically, Strike 3 also logged BitTorrent activity of third-parties' works emanating from IP address 70.110.22.197 (what it calls its "Additional Evidence"), such as television shows, movies, ebooks, and software. Several of these third-party downloads

---

[1] Strike 3 utilizes the name and address disclosed by the ISP to conduct this investigation. The subpoena is deliberately narrow and only seeks the subscriber's true name and address, which is the bare minimum to identify and serve the party. Strike 3 has not engaged in any additional early discovery with Defendant, for example, deposing the subscriber, which some courts authorize along with the subpoena. *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 21-423(PX), 2021 WL 1169272, at *3 (D. Md. Mar. 26, 2021).

correspond with Mr. Nemeth's expressed interests on social media as well as a recently obtained certificate in cybersecurity. *Id.* at ¶¶ 50–54. Viewed holistically, these connections render it at least plausible that Mr. Nemeth, and not someone else, is the infringer. Rather than deny these allegations in an Answer, Defendant filed a Motion to Dismiss challenging the reasonable inferences this Court may draw from the allegations and whether Strike 3 can link Defendant to the infringements. [CM/ECF 34]. This Response follows.

## III. LEGAL STANDARD

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *Sheppard v. Visitors of Virginia State Univ.*, No. 19-2452, 2021 WL 1227809, at *2 (4th Cir. Apr. 2, 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019)). "To survive, a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *id.* (quoting Fed. R. Civ. P. 8(a)(2)), which "does not require detailed factual allegations, [only] 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)) (internal quotations omitted). The Federal Rules of Civil Procedure "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" in support of the claim for relief. *Twombly*, 550 U.S. at 556.

## IV. ARGUMENT

### A. Defendant's Insinuations That He May Not Be the Infringer Does Not Render Plaintiff's Allegations Conclusory

Defendant's reductive interpretation of the FAC overlooks and obfuscates the thrust of Strike 3's allegations, arguing that Defendant's status as the subscriber to the infringing IP address does not entail that he is the infringer. [CM/ECF 34, at 5–7]. This tact misapprehends the legal

4

standard, the presumption of favorable inferences afforded to the complainant, and the FAC itself. It also ignores outright the posture of the litigation, as Strike 3 specifically amended its original Complaint to include additional allegations tying Mr. Nemeth to the infringements.

"Plaintiff's burden at the pleading stage is that of plausibility, not certainty." *See Strike 3 Holdings, LLC v. Doe*, No. 18-16593(MAS), 2019 WL 4745360, at *4 (D.N.J. Sept. 30, 2019) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citations omitted). "To require [Strike 3] to prove that the subscriber more likely than not is the infringer-that is, to meet its ultimate burden of proof-at the pleading stage would turn the civil litigation process on its head; 'there is no requirement that [it] present at this stage actual evidence to support the merits of its infringement allegations.'" *Malibu Media, LLC v. Doe*, No. 13-365 (PWG), 2014 WL 7188822, at *5 (D. Md. Dec. 16, 2014) (citation omitted) (Grimm, J.). Defendant's Motion does not challenge whether Strike 3 owns the copyrights in question, or even whether Strike 3's works were copied, *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 1296, 113 L. Ed. 2d 358 (1991), but simply whether Strike 3 has put forth sufficient allegations against Mr. Nemeth.

"[I]t takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address." *See Strike 3 Holdings, LLC v. Doe*, No. 19-396 (GJH), 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (citation omitted); *see also Malibu Media, LLC v. Doe*, No. 19-519 (LO/TCB), 2019 WL 7476684, at *2–3 (E.D. Va. Dec. 9, 2019), *report and recommendation adopted*, No. 19-519 (LO/TCB), 2020 WL 50448 (E.D. Va. Jan. 2, 2020) (granting default judgment in a similar

5

BitTorrent matter); *ME2 Prods., Inc. v. Mason*, No. 17-00058, 2018 WL 1470253, at *1 (E.D. Va. Mar. 26, 2018) (same). Attempting to undermine this obvious inference, Defendant cites heavily to the Ninth Circuit's decision in *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018) which held that a party's "status as the registered subscriber of an infringing IP address, *standing alone*, does not create a reasonable inference that he is also the infringer" since "multiple . . . individuals" may use the same IP address. *See id.* at 1145–46 (emphasis added); [CM/ECF 34, at 6–7]. But this decision bears little relevance to this matter.

The subscriber in *Cobbler*, Mr. Gonzales, operated an "adult foster care home," that hosted an IP address which was made available to multiple residents and employees. *See id.* Even after investigating his relationship to the infringement, including deposing Mr. Gonzales, the plaintiff conceded that "it does not appear that [Mr. Gonzales] is a regular occupant of the residence *or the likely infringer*." *Id.* (emphasis added). Despite the absence of any evidence connecting Mr. Gonzales to the infringement, the plaintiff proceeded with its claim for direct and contributory copyright infringement against him. The Ninth Circuit upheld the district court's dismissal of both claims, chiding that "[t]his result should come as no surprise to Cobbler Nevada, which acknowledged that its independent investigation did not permit identification of 'a specific party that is likely to be the infringer.'" *Id.* at 1147.

The contrasts to this matter could not be starker. Strike 3's FAC does not involve the infringement of a single movie but concerns the download and distribution of thirty-two separate works over the span of several months. [CM/ECF 30-1]. Defendant's IP address is assigned to his residence, not a commercial facility with a revolving door of visitors and employees. *See* [CM/ECF 30, at ¶ 12]. And most conspicuously, where there were no allegations connecting Mr. Gonzales to the infringement in *Cobbler*–and where the plaintiff admitted it had no evidence even *after deposing him*–here, Strike 3 has deliberately amended its complaint to include specific

6

allegations against Defendant. *See id.* at ¶¶ 47–54; *cf.* [CM/ECF 34, at 11–13] (acknowledging that Strike 3's Additional Evidence provides something more). Mr. Nemeth's disregard of Strike 3's Additional Evidence violates one of the core tenants of the pleadings that "the Court must read the complaint as a whole[.]" *See Adkins v. Rectors & Visitors of George Mason Univ.*, No. 15-879 (JCC)(MSN), 2015 WL 5638102, at *1 (E.D. Va. Sept. 23, 2015) (citing *Iqbal,* 556 U.S. at 678). Indeed, it questionable how persuasive *Cobbler*'s reasoning is here, since a complaint "survives a motion to dismiss under Rule 12(b)(6)[] regardless of whether there is a more plausible alternative explanation." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015) (reversing district court for "undermin[ing] the well-established plausibility standard").

Strike 3's allegations of these additional connections not only make it less plausible that someone else is the infringer, but render it *likely* that Mr. Nemeth is the infringer–exceeding the *Iqbal* and *Twombly* standard. The FAC includes allegations that Defendant has expressed interest in the television show "Modern Family" and the movie "Pirates of the Caribbean" on social media. [CM/ECF 30, at ¶ 51]. Strike 3 also logged data showing that Mr. Nemeth's IP address was used to download media related to those interests using the BitTorrent network.[2] The FAC also notes extensive downloads of information technology and cybersecurity material which corresponds with Defendant's recent cybersecurity certification. *See* [CM/ECF 30, at ¶¶ 53–54]. It is

---

[2] Defendant's gripe that Strike 3 pleads its Additional Evidence "devoid of further factual enhancement," [CM/ECF 34, at 12], highlights the fundamental misunderstanding of the functions of the pleadings. He insists that Strike 3 must include the specific times, "the specific cybersecurity certifications" Defendant has allegedly received, and even that Strike 3 append "exhibits or attachments to its Amended Complaint to support these allegations." *Id.* This demands more, onerously so, than is required by *Iqbal* and *Twombly*. Indeed, plaintiffs have been sanctioned for appending of their Additional Evidence" to the pleadings. *See e.g., Malibu Media LLC v. Doe*, No. 13-205(WMC), 2013 WL 4821911, at *3 (W.D. Wis. Sept. 10, 2013) (rejecting as "specious" plaintiff's argument that attaching the exhibit added detail to the complaint, noting "[as] decisions by this and other federal courts underscore, the complaints filed are easily specific enough to survive a motion to dismiss on plausibility grounds without the addition [of the Additional Evidence]."). Defendant, who possesses and controls much of the evidence–yet has not even denied the veracity of the allegations in the FAC, cannot hide behind the informational asymmetry at the pleading stage to forestall litigation. Strike 3 will produce to Defendant its Additional Evidence during discovery. *See id.*

reasonable to infer that the same party who used IP address 70.110.22.197 to download third-party works also downloaded Strike 3's works. And where evidence also exists tying Mr. Nemeth to those third-party downloads, it is certainly plausible that the same individual infringed Strike 3's works.

"[B]y alleging that Plaintiff conducted an investigation and discovered that Defendant's publicly available social media profile contains [materials] that match the types of third party works [in Strike 3's Additional Evidence], Plaintiff has sufficiently connected Defendant personally with evidence of BitTorrent use traced to the subject IP address and residence assigned that IP address, where Defendant lived." *Malibu Media v. Rahuse*, No. 14-6976 (JLL)(JAD), 2015 WL 2231853, at *4 (D.N.J. May 11, 2015) (denying motion to dismiss); *see Malibu Media, LLC v. Doe*, No. 14-748 (WDQ), 2015 WL 857408, at *4 (D. Md. Feb. 26, 2015) ("That the Defendant's IP address was used to obtain 2,034 other third party files through BitTorrent over an 18-month period supports the reasonable inference that the Defendant—and not some other person using the Defendant's IP address—was the infringer."); *Malibu Media, LLC v. Doe*, No. 18-450, 2019 WL 8301066, at *2 (N.D. Ill. June 5, 2019) ("[T]he additional works may serve as circumstantial evidence that [Defendant], and not another individual accessing the IP address, downloaded [Plaintiff]'s copyrighted works."). Accordingly, Defendant's overreliance on *Cobbler* is not only inapt, but untenable given the FAC's inclusion of the "something more" that was missing from that case.

### B. Defendant Demands a More Onerous Pleading Standard than What is Required by the Federal Rules of Civil Procedure

#### 1. *Evidence Is Not Required in the Complaint*

Defendant also confuses Strike 3's burden at the pleading stage. Primarily, Mr. Nemeth takes issue that one of Strike 3's experts, Patrick Paige, has only submitted an analysis of one of

the infringements. [CM/ECF 34, at 8]. This argument is of no moment, however, since Defendant's position tries to turn the civil procedure on its head again, demanding hard evidence at the pleading stage before formal discovery has commenced.

There is no burden of proof demanded of a complaint; the only burden required by Fed. R. Civ. P. 8(a)(2) is that Strike 3 plead "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 550 U.S. at 555. "A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Pili v. Patel*, No. 18-317, 2019 WL 180185, at *7 (E.D. Va. Jan. 11, 2019) (citations omitted). Strike 3 "need not set out all of the precise facts on which the claim is based." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1211 (D.C. Cir. 2020) (citation omitted). "Nor must the plaintiff prove its ultimate claim." *Id.* (citation omitted). In fact, "the Federal Rules of Civil Procedure discourage the pleading of evidence." *Untracht v. Fikri*, 368 F. Supp. 2d 409, 415 (W.D. Pa. 2005).

"At this stage of the proceedings, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant *is entitled to offer evidence to support the claims.*'" *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S. Ct. 1497, 1510, 161 L. Ed. 2d 361 (2005) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)) (emphasis added). Thus, inquiries into whether Strike 3 has met its ultimate burden–that is, whether it can demonstrate by a preponderance of the evidence that Mr. Nemeth infringed its copyrights–is simply a matter for a later date "*after* adequate time for discovery . . . ." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986) (emphasis added).

Defendant's nits with Strike 3's evidence is thus beyond the scope of the Motion. To be clear, Mr. Paige's declaration was not submitted in support of Strike 3's original Complaint or

FAC; it was submitted in support of Strike 3's request for leave to take early discovery so that it could obtain authorization to subpoena Defendant's ISP. *See* [CM/ECF 6-2]. Again, the unusual starting point of BitTorrent litigation begins with a complaint against a "placeholder defendant[,]" *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2020 WL 3567282, at *7 (D.N.J. June 30, 2020), which allows Strike 3 to then request early discovery so that it can investigate the infringer's identity. As is the case here, once Strike 3's investigation finds sufficient evidence linking a party to the infringement, it amends its complaint, and then the litigation progresses like any ordinary copyright infringement case.

While Mr. Paige's declaration is undeniably relevant to the Strike 3's claim, it is hardly the sole basis to it. Mr. Paige simply performs a "self-audit" of some of Strike 3's evidence to confirm VXN Scan's accuracy. *See generally* [CM/ECF 6-1] (explaining how VXN Scan functions). When VXN Scan records an IP address transacting "pieces"–small amounts of metadata and the infringing media–it records that in a Packet capture file, or "PCAP." *See id.* at ¶¶ 58–59. While VXN Scan records multiple PCAPs per IP address, at this preliminary stage of the litigation, *see id.*, Mr. Paige simply conducts an in-depth review of one of those PCAPs to confirm not only that the time and date of the recorded transaction are correct, but that the PCAP contains actual evidence of the digital file being uploaded to VXN Scan by the infringing IP address. [CM/ECF 6-2, at ¶¶ 26–27]. This ensures that when Strike 3 issues its subpoena on the ISP with the precise date (down to the second), it is positive that the identified subscriber was registered to that particular IP address when the infringement occurred. Mr. Paige's extra layer of review also safeguards other parties' privacy interests by limiting the ISP's response to a single transaction in which Strike 3 is confident that one of its works was infringed.

Moreover, Strike 3 does not request more times from the ISP to reduce the burden of production, particularly because the redundancy does little to effect the pleadings. *See* Fed. R.

Civ. P. 26(b)(2) (limiting discovery to what is "proportional to the needs of the case, considering . . . whether the burden or expense of the proposed discovery outweighs its likely benefit"). Defendant tries to cast doubt on this by suggesting that his IP address might be "dynamic," meaning his IP address may have changed during period of infringement. [CM/ECF 34, at 9–10]. Yet such speculations do not carry the Motion. First, even if the Court were to accept Defendant's argument, he does not refute that he was the subscriber on July 16. 2020. So that aspect of the claim survives regardless of the dynamic or static nature the IP address.[3] More importantly, the *mere possibility* that Defendant was not the subscriber for some of the infringements does not render Strike 3's claim against Mr. Nemeth implausible. *See Houck*, 791 F.3d at 484; *cf. Strike 3 Holdings,* 964 F.3d at 1212. The inference that the same party who used the BitTorrent network on July 16, 2020 is the same party who used it to download the remaining thirty-one works during the period of infringement is not just reasonable, but powerful.

Regardless, these evidentiary concerns are best left for discovery and summary judgment, and *not* for the pleadings.

> *Iqbal* and *Twombly* do not require a plaintiff to prove [its] case in the complaint. The requirement of nonconclusory factual detail at the pleading stage is tempered by the recognition that a plaintiff may only have so much information at his disposal at the outset. A "complaint need not 'make a case' against a defendant or '*forecast evidence* sufficient to *prove* an element' of the claim. It need only '*allege facts* sufficient to *state* elements' of the claim."

*Robertson v. Sea Pines Real Est. Companies, Inc.*, 679 F.3d 278, 291 (4th Cir. 2012) (quoting *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir. 2005) (emphases in original) (citations omitted)). Indeed, discovery may reveal even direct evidence of infringement, such as

---

[3] It is also telling that Defendant does not actually state that his IP address changed during the period of infringement. The most likely explanation for this is that Defendant, like Strike 3, does not know if or when he IP address changed values. Taking Defendant's point to its logical conclusion, Strike 3 would have to blindly fire off dozens of redundant production requests to the ISP in its subpoena on the off chance that a parties' IP address was reassigned. Rather than engage in a cumbersome fishing expedition at this nascent stage, that question is more easily addressable during formal discovery.

11

the files themselves. *See e.g.*, *Malibu Media, LLC v. Bui*, No. 13-162, 2014 WL 12469955, at *1 (W.D. Mich. July 21, 2014) (granting summary judgment to plaintiff where its expert examined defendant's hard drive and confirmed the infringing files were located on defendant's computer). Defendant's proposal to the gates of discovery because Strike 3 does not yet have all the facts at the outset of the litigation flies in the face of the civil system.

### 2. *Pleadings Are Not Conclusory Merely Because They Do Not Allege Every Imaginable Fact or Piece of Evidence*

To that end, Mr. Nemeth's checkered reading of Strike 3's FAC does not render its allegations conclusory. Courts have long criticized talismanic invocation that a pleading is "conclusory." *Cf. Twombly*, 550 U.S. at 590 (Stevens, J., dissenting) (citation omitted) ("The Federal Rules of Civil Procedure establish a system of notice pleading rather than of fact pleading, . . . so the happenstance that a complaint is 'conclusory,' whatever exactly that overused lawyers' cliché means, does not automatically condemn it[.]"). The fact remains that the allegations linking this particular defendant to the infringement are far from conclusory.[4] "[A]llegations are conclusory and not entitled to be assumed true" when, for example, they amount to "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a cause of action. *See id.* at 555. That is not the case here.

---

[4] No court reviewing Strike 3's cases has held that Plaintiff's amended complaint conclusory linked the Defendant to the infringement. *See e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-06488, ECF 24 (N.D. Ill. Apr. 4, 2019) ("Even if the bare fact that someone at defendant's IP address downloaded plaintiff's films is not enough to sue defendant, plaintiff has alleged additional facts linking defendant's interests, as expressed on social media, to BitTorrent piracy at his IP address. For example, plaintiff alleges not only that someone used defendant's IP address to download its films, but also that defendant follows several of plaintiff's performers on social media and even retweeted suggestions for future films to plaintiff's chief creative officer. These allegations together state a plausible, nonspeculative claim for relief under federal pleading standards."); *see also Strike 3 Holdings, LLC v. Doe*, No. CV 18-01874 (GLR), ECF 17 (D. Md. Oct. 26, 2018) (denying motion to dismiss); *Strike 3 Holdings, LLC v. Doe*, No. CV 18-14060, ECF 14 (E.D. Mich. May 31, 2019) (sane). While two cases had held Strike 3's original complaint made conclusive allegations–before Strike 3 even issued an early subpoena–both were overturned on appeal. *Strike 3 Holdings, LLC v. Doe*, No. 18-12585 (NLH)(JS), 2019 WL 5446239, at *7 (D.N.J. Oct. 24, 2019), *rev'd*, No. 18-12585 (NLH/JS), 2020 WL 3567282 (D.N.J. June 30, 2020); *see Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160, 164 (D.D.C. 2018), *rev'd and remanded*, 964 F.3d 1203 (D.C. Cir. 2020).

As outlined in greater detail in the FAC, VXN Scan recorded and logged Defendant's IP address distributing "pieces" of thirty-two of Strike 3's motion pictures. *See* [CM/ECF 30, at ¶¶ 28–40]. Those files were downloaded and distributed by an individual, and that evidence points to Mr. Nemeth. *Supra* Sec. IV.A. The FAC simply notes that Mr. Nemeth is "likely" the infringer in compliance with Fed. R. Civ. P. 11(b)(3). "Plaintiff may be wrong [that Defendant is the infringer]—but it is not required to prove its allegations in order to adequately plead a claim of infringement under *Twombly*." *ME2 Prods., Inc. v. Kariuki*, No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4, 2018). "[S]hort of staking out [Mr. Nemeth]'s residence, it is unclear how [Plaintiff] could have obtained any further information concerning [his] internet usage." *Malibu Media, LLC v. Palella*, No. 18-3041, 2019 WL 1584556, at *2 (N.D. Ill. Apr. 12, 2019) (holding that the defendant's claim that he was not the infringer "is best left for discovery").

Thus, the FAC does not merely plead "an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678 (citations omitted), but details the "who, what, when, where, and why"–including the intricate operations of the technology–which would pass even a heightened pleading standard. *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 215 (4th Cir. 2017). Mr. Nemeth has more than adequate notice of the claim made against him. His evidentiary quibbles are not grounds to cut down the litigation at this early stage.

/ / /


/ / /

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Rule 12(b)(6) Motion to Dismiss.

Dated: May 7, 2021

Respectfully submitted,

/s/ *Jacqueline M. James*
Jacqueline M. James, Esq.
*Pro Hac Vice*
Attorney for Strike 3 Holdings, LLC
The James Law Firm, PLLC
445 Hamilton Avenue Suite 1102
White Plains, New York 10601
T: 914-358-6423
F: 914-358-6424
E-mail: jjames@jacquelinejameslaw.com

*/s/ Dawn M. Sciarrino*
Dawn M. Sciarrino, Esq.
Va. Bar No. 34149
Attorney for Strike 3 Holdings, LLC
The James Law Firm PLLC.
445 Hamilton Ave. Suite 1102
White Plains, New York 10601
T: 202-256-9551
F: 202-217-3929
E-mail: dsciarrino@jmjameslaw.com

## **CERTIFICATE OF SERVICE**

       I hereby certify that on May 7, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: <u>/s/ <i>Jacqueline M. James</i></u>